UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARIN ALLEN,

    Plaintiff,

v.

MAERSK LINES LIMITED,

    Defendant.

Case No. 13-cv-05812-SI

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 27

Defendant moves for summary judgment. Defendant's motion was set for oral argument on January 23, 2015. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court DENIES defendant's motion.

**BACKGROUND**

In the pre-dawn hours of the morning on February 24, 2011, plaintiff Darin Allen was working in the Port of Oakland aboard the *M/V Sealand Charger*, a vessel owned and operated by defendant Maersk Lines Limited ("Maersk"). Plaintiff was working as a stevedore, employed by PortsAmerica. Cargo containers were secured to the vessel by a series of metal rods, known as lashing rods. One end of the lashing rod is inserted into the corner casting of the container, while the other end is attached to a turnbuckle affixed to the deck of the ship. Turnbuckles may be rotated to either tighten or loosen the lashing rod depending on whether the objective is to secure the cargo for transport, or to unsecure it for discharge from the vessel. On the morning in question, plaintiff's duties involved working with a partner to unsecure certain cargo containers on the

vessel so that they could be removed from the vessel. While plaintiff's partner was twisting the turnbuckle attached to one of the rods, it broke free from its casting and struck plaintiff in the head, causing her injuries.

On October 29, 2013, plaintiff filed this action in Alameda County Superior Court, alleging that defendant's negligence was the cause of her injuries. Docket No. 1-1, Exh. 1. On December 16, 2013, defendant removed this action to federal court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1441(b). Docket No. 1. Now before the Court is defendant's motion for summary judgment, filed on December 8, 2014. Docket No. 27.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a summary

2

judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## DISCUSSION

### I. Statutory Framework

The Longshore and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. § 901 *et seq.*, provides a comprehensive framework for no-fault compensation of longshore workers and their families for work-related injuries and deaths. In 1972, Congress made significant amendments to the Act, with the goal of "shift[ing] more of the responsibility for compensating injured longshoremen to the party best able to prevent injuries: the stevedore-employer." *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 97 (1994). These reforms included abolishing the longshore worker's right to recover from the ship owner for unseaworthiness,[1] eliminating the requirement that the stevedore-employer indemnify the ship owner, and increasing the statutory benefits to which injured longshoremen are entitled under the no-fault scheme. *Id.*

In its current incarnation, the Act requires the stevedore employer to compensate its injured

---

[1] "Proof of unseaworthiness required no proof of fault on the part of the shipowner other than an unsafe, injury-causing condition on the vessel. This was true even though the condition was caused, created, or brought into play by the stevedore or its employees." *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 164-65(1981).

3

workers on a no-fault basis, and insulates the employer from any additional liability to the longshore worker. 33 U.S.C. § 904, 905(a). Under section § 905(b) of the Act, a longshore worker may bring an action against the owner of the vessel as a third party, when the worker's injuries were caused by the ship owner's negligence. The Act does not define "negligence;" but courts have recognized three duties whose breach may give rise to an action under § 905(b).

> The first, which courts have come to call the "turnover duty," relates to the condition of the ship upon the commencement of stevedoring operations. The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore.

*Howlett* 512 U.S. at 98. (internal citations omitted).

## II.     The Turnover Duty

Plaintiff concedes in her opposition that her cause of action under § 905(b) only implicates the turnover duty. Docket No. 29, Pl. Opp'n at 4 nt. 2. The turnover duty encompasses two distinct, but interrelated duties. First, the vessel owner must exercise "ordinary care" to turn over the ship and its equipment in such a condition that "an expert and experienced" stevedore, "mindful of the dangers [she] should reasonably expect to encounter" will be able to perform her duties safely. *Howlett* 512 U.S. at 98, *citing Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 417 nt. 18 (1969). Second, the vessel owner must warn the stevedore of "any hazards on the ship or with respect to its equipment" that (a) are known or should be known to the vessel owner in the exercise of reasonable care, (b) are likely to be encountered by the stevedore in the performance of her duties, and (c) are not known by the stevedore, nor would they be obvious or anticipated by a "reasonably competent" stevedore. *Id.*

4

"The vessel's responsibilities to inspect…the ship are commensurate with its access and control." *Id.* at 104. Therefore, the force of the turnover duty is at its lowest ebb when concerning hazards arising from the ship's cargo, and applies with greater force when concerning hazards arising from the ship itself or its equipment. *Id.* There is also no requirement that the vessel owner "inspect or supervise the stevedoring operation."[2] *Scindia Steam*, 451 U.S. at 168. The scope of the turnover duty is thus guided by the understanding that "[s]ubjecting vessels to suit for injuries that could be anticipated and prevented by a competent stevedore would threaten to upset the balance Congress was careful to strike in enacting the 1972 amendments." *Id.* at 97. *See also Ludwig v. Pan Ocean Shipping Co.*, 941 F.2d 849, 852 (9th Cir. 1991), *quoting Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1208 (9th Cir. 1989) ("a shipowner may rely on the expertise of longshoremen and 'leave unremedied conditions that would otherwise be considered unreasonably dangerous to less skilled persons.'").

Plaintiff has adduced no evidence that defendant had actual knowledge of the hazardous condition. Therefore, in order to prevail at trial, plaintiff must show (a) that defendant should have known of the hazardous condition in the exercise of reasonable care, and (b) it was not a hazard that should have been anticipated by a reasonably competent stevedore.

A.   **Location of the Hazard**

As an initial matter, the parties argue over whether the hazard that caused plaintiff's injury was part of the cargo stow or the ship's equipment. As noted above, the vessel owner's duty as it relates to hazards present in the cargo stow is quite limited. *Howlett* 512 U.S. at 105 ("[T]he vessel's turnover duty to warn of latent defects in the cargo stow and cargo area is a narrow one.

---

[2] Such a duty may attach in limited circumstances when there is a "contract provision, positive law, or custom to the contrary." *Scindia Steam* 451 U.S. at 172.

The duty attaches only to latent hazards."). Plaintiff argues that lashing rods and turnbuckles are equipment provided by the ship owner. Defendant contends that the gear is connected to the storage containers, and should thus be construed as being part of the ship's stowage.

Case law provides no definitive guidance on this issue. The Supreme Court has held that a defective winch used in cargo operations is part of the vessel's equipment, *Scindia Steam*, 451 U.S. at 159, but suggested that a plastic tarp laid under cargo containers constitutes stowage. *Howlett* 512 U.S. at 106. *See also Kirsch v. Plovidba*, 971 F.2d 1026, 1027 (3d Cir. 1992) (an oil slick in the cargo area which may have originated outside the cargo area was deemed part of the ship's stowage); *Hill v. NSB Niederelbe Schiffahrtsges.MBH & Co.*, No. CIV.A. 02-2713, 2003 WL 23162396, at *7 (E.D. Pa. Dec. 30, 2003) (in a case involving alleged breach of the turnover duty arising from injuries sustained from a lashing rod that broke free from a container, court found that there was a genuine issue of fact as to whether the injury was a result of a hazard in the ship's equipment or the cargo stow). Accordingly, the Court finds that there is a genuine issue of fact as to whether the hazard emanated from the ship's cargo area or equipment.

### B.     Knowledge and Duty

Defendant argues that it had no duty to warn of potential hazards emanating from defects in the lashing rods because (1) they were within the ship's stowage[3], and (2) because an experienced stevedore, exercising reasonable care would have discovered any such defects.

Defendant points the Court to certain provisions of the Pacific Coast Marine Safety Code[4]

---

[3] As noted above, the Court finds that there is conflicting evidence as to whether the location of the hazard should be properly classified as existing within the stowage or as part of ship's equipment.
[4] Courts have looked to the Safety Code when determining the duties of the parties under the Act. *See Estate of Ross v. M/V Stuttgart Exp.*, No. C-08-03989 JCS, 2011 WL 9311, at *2 (N.D. Cal. Jan. 3, 2011). Both parties in this case agree that the Code provides persuasive

6

("the Safety Code") to show that it did not have a duty to inspect the lashing rods. Rule 401 states that the stevedore employer "shall see that all working conditions are safe and that gear is in apparent safe working condition before and during the operation." Rule 1523 puts the onus on the longshore worker to ensure that lashing rods are properly attached to turnbuckles to prevent them from falling. Defendant thus argues that the Code allocates the duty to inspect the lashing rod to the longshore worker and her employer.

Defendant also highlights evidence suggesting that an experienced longshore worker should have anticipated and mitigated any hazard arising from a faulty lashing rod. At the time of the accident, plaintiff had been a longshore worker for approximately eight years. Allen Dep. at 22:21-23:5, 43:10-24. She had received considerable training, and was qualified not only as a lasher, but also as a forklift driver and a tractor driver. *Id.* at 24:3-25:23. Plaintiff testified that she was aware that lashing rods were sometimes not tightened properly or could become loose at sea, but testified that she did not check the lashing rod that injured her before she began to unlash it with her partner. *Id.* at 57:6-25.

Plaintiff responds by pointing to testimony from the captain of the *M/V Sealand Charger*, Steven Oelkers. Captain Oelkers testified that it is the defendant's policy to check the lashing rods to make sure they are properly secured when voyaging between ports, and that on the day of the alleged accident, the lashing gear was indeed checked by crew members before it arrived at the Port of Oakland – including the lashing rod that injured plaintiff. Oelkers Dep. 12:4-14, 13:9-14:9, 22:5-23:3, 33:2-22. Captain Oelkers testified that the lashing rods were all visually checked, but that crew members did not physically inspect each one to ensure they were correctly secured. *Id.* Plaintiff also points to Rule 202 of the Safety Code which places the duty on all vessel owners to inspect all of the ship's gear "before [the] gear is used for stevedoring operations." Furthermore,

---

guidance on this issue. Def. Mot. at 4 nt. 3; Pl. Opp'n at 5 nt. 3.

plaintiff's expert asserts that it is "common practice" for vessel operators to physically inspect every lashing rod on a vessel to insure that they are properly locked in position. Sweeney Decl. ¶¶ 5-7. Plaintiff asserts that this evidence militates in favor of finding that it was defendant's duty to *physically* inspect each lashing rod and turnbuckle, which would have uncovered the alleged defect that ultimately injured plaintiff. Furthermore, plaintiff testified that the instant that her partner touched the turnbuckle, the lashing rod came loose from the container, which tends suggest that even an experienced stevedore would not have been able to discover the danger before it was too late. Allen Dep. at 56:1-5.

A "shipowner is not required to turn over a ship free from hazard, but is obliged to turn over a vessel in such condition that an expert and experienced stevedore, by the exercise of reasonable care, would be able to carry out cargo operations with reasonable safety." *Lipari v. Kawasaki Kisen Kaisha, Ltd.*, 923 F.2d 862 (9th Cir. 1991). "In determining whether a particular hazard is unreasonably dangerous, the fact finder must examine the totality of the factual circumstances surrounding the hazard and the accident and consider them as a whole. *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1270-71 (9th Cir. 1994). Because of the fact-intensive nature of the inquiry, "[s]ummary judgment is *rarely* granted […]. Whether the defendant acted reasonably is ordinarily a question for the trier of fact." *Id.* at 1269 (emphasis in original). *See also Estate of Ross v. M/V Stuttgart Exp.*, No. C-08-03989 JCS, 2011 WL 9311, at *6 (N.D. Cal. Jan. 3, 2011) ("Whether a hazardous condition is so easily avoidable or easily rectifiable such that it could not constitute an unreasonably dangerous condition is a matter that must be factually evaluated on a case-by-case basis.").

The Court finds that plaintiff has submitted sufficient evidence to raise a triable issue of fact as to whether defendant should have known of the alleged hazard, and whether an experienced stevedore should have been able to discover and mitigate such a hazard.

### C. Existence of Defect

Defendant asserts that summary judgment must be granted because "Plaintiff has failed to bring forth *any evidence*, whether circumstantial or direct, of her primary contention that the lashing rod was broken." Docket No. 32, Def. Rep at 3 (emphasis in original). The Court disagrees. The captain of the vessel testified that it is "impossible" for a lashing rod to fall out of the corner casting if it is properly inserted, Oelkers Dep. at 42:5-15, except that a lashing rod can come out of a corner casting if the "elephant's foot" tip of the rod is broken. Oelkers Dep. at 46:1-11. This tends to show that the lashing rod was not inserted properly, or was broken, and thus creates a triable issue of fact as to whether there was some unreasonably hazardous condition on the vessel when plaintiff commenced her lashing operations.

### CONCLUSION

Genuine issues of fact exist as to (1) whether the accident was caused by a defect to the lashing rod, (2) whether the lashing gear was part of the stowage or the ship's equipment, (3) whether defendant should have known of the hazardous condition, (4) whether an experienced stevedore should have been able to anticipate and mitigate the hazardous condition. Accordingly, the Court **DENIES** defendant's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: January 21, 2015

SUSAN ILLSTON
United States District Judge